IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

Randee D.,[1]

     Plaintiff,

  v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

     Defendant.

_____

No. 6:19-cv-01905-HL

**OPINION AND ORDER**

HALLMAN, United States Magistrate Judge:

  Plaintiff Randee D. brings this action under the Social Security Act (the "Act"), 42

U.S.C. § 405(g), to obtain judicial review of a final decision of the Commissioner of Social

Security (the "Commissioner").  The Commissioner denied Plaintiff's application for Disability

Insurance Benefits ("DIB") and Social Security Income ("SSI") under Title II of the Act.  42

---

[1]  In the interest of privacy, this Opinion and Order uses only the first name and the
initial of the last name for non-governmental parties and their immediate family members.

U.S.C. § 401 *et seq*.  The parties have consented to the jurisdiction of the Magistrate Judge

pursuant to 28 U.S.C. § 636.  ECF 25.

　　　For the following reasons, this case is REVERSED and REMANDED.  On remand, the

ALJ shall (1) reassess Plaintiff's subjective symptom testimony without reference to her work

activity during the relevant time period; (2) discuss Plaintiff's journal entries and discuss their

impact in evaluating Plaintiff's subjective symptom testimony; (3) reconduct the step three

analysis; (4) make written findings of Plaintiff's transferable skills; and (5) reconduct the step

five analysis.

## STANDARD OF REVIEW

　　　42 U.S.C. § 405(g) provides for judicial review of the Social Security Administration's

disability determinations: "The court shall have power to enter . . . a judgment affirming,

modifying, or reversing the decision of the Commissioner of Social Security, with or without

remanding the cause for a rehearing."  The court must affirm the Commissioner's decision if it is

based on proper legal standards and the findings are supported by substantial evidence in the

record.  *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989).  Substantial evidence is "more

than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as

adequate to support a conclusion."  *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation

omitted).  The court must weigh "both the evidence that supports and detracts from the

[Commissioner's] conclusion."  *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986).  "Where

the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its]

judgment for the ALJ's."  *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (citation

omitted); *see also Burch v. Barnhart*, 400 F.3d 676, 680-81 (9th Cir. 2005) (holding that the

court "must uphold the ALJ's decision where the evidence is susceptible to more than one

rational interpretation").  "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence."  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quotation omitted).

## BACKGROUND

This case has a lengthy procedural history spanning over 12 years, with three prior appearances before the district court.  Despite this case's lengthy procedural history, the crux of this case focuses on the extent of Plaintiff's disability over 20 years ago between 1995 and 1998.

## I.    Procedural History

Plaintiff protectively applied for DIB on October 15, 2009.  Tr. 11.[2]  Plaintiff alleged an initial onset date of December 31, 1998, and she amended her alleged onset date to January 1, 1995.  Tr. 11.  Her application was denied initially on December 11, 2009, and on reconsideration on April 28, 2010.  *Id.*  Plaintiff subsequently requested her first hearing, which was held on November 9, 2011, before Administrative Law Judge ("ALJ") Alan Beall.  Tr. 21-63.  Plaintiff appeared and testified at the hearing, represented by counsel; a vocational expert ("VE") also testified.  *Id.*  On November 15, 2011, the ALJ issued a decision denying Plaintiff's claim.  Tr. 11-16.  Plaintiff requested Appeals Council review, which was denied on February 9, 2012.  Tr. 1-3.  On review, Judge Redden reversed and remanded to the ALJ for further proceedings in an Opinion and Order ("O&O") dated April 16, 2013.  Tr. 687-94.

On first remand to the ALJ, Plaintiff requested a second hearing, which was held on April 27, 2015, before ALJ Elizabeth Watson.  Tr. 947.  Plaintiff appeared and testified at the hearing, represented by counsel, and a VE also testified.  *Id.*  On May 19, 2015, the ALJ issued an

---

[2]        Citations to "Tr." are to the Administrative Record.  (ECF 19).

unfavorable decision denying Plaintiff's claim.  Tr. 947-57.  Plaintiff appealed again, and Judge Russo reversed and remanded for further proceedings on July 26, 2016.  Tr. 964-81.

On second remand to the ALJ, Plaintiff requested another hearing, which was held on March 22, 2017, before ALJ Watson.  Tr. 894.  Plaintiff appeared and testified at the hearing, represented by counsel, and a VE also testified.  *Id.*  On September 15, 2017, ALJ Watson issued an unfavorable decision, again finding that Plaintiff was not disabled.  Tr. 894-913.  Plaintiff appealed for a third time, and the parties stipulated to an order of remand.  Tr. 1638-39.  As such, Judge Jelderks reversed and remanded for further proceedings.  Tr. 1637-38.

Finally, on third remand to the ALJ, Plaintiff subsequently requested another hearing, which was held on July 1, 2019, before Administrative Law Judge ("ALJ") John Sullivan.  Tr. 1592-1615.  Plaintiff appeared and testified at the hearing, represented by counsel; a VE, Francene Geers, also testified.  *Id.*  On July 24, 2019, ALJ Sullivan issued an unfavorable decision denying Plaintiff's claim for disability benefits.  Tr. 1564-82.  Plaintiff now seeks review for the fourth time before this Court.

## II.    Factual History

Plaintiff alleges disability based on multiple sclerosis ("MS"), fibromyalgia, chronic myofacial syndrome, sleep apnea, depression, arthritis in hands, shoulders, back and left hip, and diverticulitis.  Tr. 130.  At the time of her amended alleged onset date, she was 44 years old.  Tr. 118, 125.  She has attended business school for administrative assistant training and has past relevant work experience as an administrative clerk.  Tr. 136, 1580.

A.    *Plaintiff's Testimony*

    i.    2011 Hearing

Plaintiff testified that she stopped working for pay in 1993.  Tr. 28.  In 1994, Plaintiff

began working for her then-husband's ("husband's") dental equipment business.  Tr. 28-29.  She

performed bookkeeping, invoicing, and answered telephones.  Tr. 29.  She testified that she

worked for her husband part-time, approximately 10 to 12 hours per week.  Tr. 29-30.

    Beginning in the mid-1990s, Plaintiff testified that she started experiencing symptoms

that interfered with her work: she was fatigued all the time, had to take naps every day that

usually spanned a couple of hours, and had poor concentration.  Tr. 31-32, 41-42.  Plaintiff also

stated that she had poor coordination and fell a lot.  Tr. 32.  Additionally, she testified that she

had groin pain that prevented her from walking very far and caused constant pain.  Tr. 34.

    Regarding medical evidence of Plaintiff's condition before her date last insured ("DLI")

on December 31, 1998, Plaintiff testified that she was unable to provide any medical evidence

because her records had been destroyed or her doctors had retired.  Tr. 31.  Plaintiff testified,

however, that she saw some general practitioners ("GPs") in the mid-1990s, and she began

seeing Dr. James Morris, in May 1999.  Tr. 30, 33.  Plaintiff also kept a health diary in 1996 and

1997 that recorded her symptoms.  Tr. 35-36.

    ii.    2015 Hearing

Plaintiff testified that she stopped working for pay around 1992 because she was let go

from her job.  Tr. 1086.  When asked whether she still worked for her husband's business at the

time of the hearing, she testified that she still paid the bills for the business.  *Id.*  She further

testified that she only worked 10 to 15 hours per week during the relevant period.  Tr. 1087.

Regarding her medical condition between 1995 and 1998, Plaintiff testified that she fell a lot,

had intense groin pain, could hardly walk, took frequent naps, had extreme fatigue, and was frequently confused.  Tr. 1087-88.  She noted that doctors could not figure out what was wrong with her, and she was not diagnosed with MS until 2001.  Tr. 1088.

iii.    2019 Hearing

Plaintiff testified that before her DLI, she had back pain, groin problems so intense that she sometimes could not walk, extreme fatigue, confusion, and a lack of concentration.  Tr. 1601-02.  She testified that she was working around 10 to 15 hours per week.  Tr. 1603, 1604. She noted that there were days when she was unable to perform her work because of her groin pain, back pain, and her fatigue, which caused her to take frequent naps every day that sometimes spanned three hours.  Tr. 1603-05.

B.    *Medical Evidence*

The earliest medical evidence in the record is from May 12, 1999.  Tr. 241.  On that date, Plaintiff first saw Dr. Morris, M.D., a pain specialist.  Tr. 241.  At the May 12 visit, Dr. Morris reported that Plaintiff presented with a history of chronic lower back pain and lower extremity pain that "began about 4 years ago with no single precipitating incident."  Tr. 356.  He noted that Plaintiff reported that she "fell several times but did not seek medical attention."  Tr. 356.  He reported that Plaintiff felt "'totally frustrated'" because she had "seen 6 or 8 doctors, and nobody knows why she has the groin pain or why it is there."  Tr. 356.

During Dr. Morris's physical exam of Plaintiff, he noted that Plaintiff's reflex, motor, and sensory exam was "unremarkable."  Tr. 357.  Plaintiff had a full range of motion in both her upper and lower extremities, and Dr. Morris did not observe any "motor or sensory deficits."  Tr. 357.  In Dr. Morris's assessment, he diagnosed Plaintiff with degenerative lumbosacral disc

disease, myofascial pain syndrome, and "probably some genitofemoral neuropathy of unclear etiology." Tr. 358.

Dr. Morris eventually diagnosed Plaintiff with fibromyalgia and noted that a brain MRI suggested MS in October 2001. Tr. 546-52. In April 2002, Dr. Kathleen Wilken, a neurologist, diagnosed Plaintiff with MS. Tr. 464. In a 2011 letter to Plaintiff's attorney, Dr. Morris stated that Plaintiff's "medical conditions began affecting [her] in 1995 or before," and that "[s]he has been unable to hold a job outside of the home since [Dr. Morris] met her." Tr. 241. Dr. Morris opined that Plaintiff's restrictions included "[l]imited sitting, standing, walking or reaching. Cannot lift more than 10 lb occasionally. Unable to bend, twist, stoop. Unable to withstand stress. Flare-ups in condition will cause disability and inability to work in any capacity on an average of 4-5 days per month." Tr. 241.

C.    *Lay Testimony*

In a letter dated November 11, 2011, Plaintiff's husband wrote a letter addressed to an ALJ. Tr. 180-83. He noted that Plaintiff was well until around 1990 when she began having back problems, sleeping more, and losing her balance. Tr. 180. He explained that she had difficulty preparing meals and that "cleaning the house became a painful task." Tr. 181.

Plaintiff's husband also testified at the 2011 ALJ hearing. Tr. 46. He testified that he and Plaintiff lived together between 1995 and 2000. Tr. 48. Regarding Plaintiff's ability to function at work, he testified that Plaintiff worked approximately 30 to 35 hours a week before 1999. Tr. 51. Beginning in the early 1990s, he testified that Plaintiff started losing focus at work mid-morning, and Plaintiff stopped working for him because her work abilities began deteriorating and affecting her job performance. Tr. 49. He testified that he had hired an

employee to take over Plaintiff's billing tasks around 1999, and Plaintiff stopped working for him entirely around 2005-2006.  Tr. 50-51.

Regarding Plaintiff's ability to function at home, he testified that household duties started becoming difficult for Plaintiff beginning in the early 1990s.  Tr. 52.  He testified that it was difficult for her to take out the trash and do laundry, and she could not stand in front of the sink to wash dishes for more than three to seven minutes.  Tr. 52-54.  Ultimately, he testified that he had to take over some of the household duties for Plaintiff.  Tr. 52, 53.

### III.    Sequential Disability Process

The initial burden of proof rests upon the claimant to establish disability.  *Howard v. Heckler*, 782 F.2d 1484, 1486 (9th Cir. 1986).  To meet this burden, the claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  Importantly, "[a] claimant can qualify for [DIB] only if her disability begins by her date last insured, and these benefits can be paid for up to 12 months before her application was filed."  *Wellington v. Berryhill*, 878 F.3d 867, 872 (9th Cir. 2017).

The Commissioner has established a five-step process for determining whether a person is disabled.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520, 416.920.  At step one, the Commissioner determines whether a claimant is engaged in "substantial gainful activity"; if so, the claimant is not disabled.  *Yuckert*, 482 U.S. at 140; 20 C.F.R. §§ 404.1520(b), 416.920(b).

At step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140-41; 20 C.F.R. §§

404.1520(c), 416.920(c).  A severe impairment is one "which significantly limits [the claimant's] physical or mental ability to do basic work activities[.]"  20 C.F.R. §§ 404.1520(c) & 416.920(c). If not, the claimant is not disabled.  *Yuckert*, 482 U.S. at 141.

At step three, the Commissioner determines whether the impairments meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Id.*; 20 C.F.R. §§ 404.1520(d), 416.920(d).  If so, the claimant is conclusively presumed disabled; if not, the analysis proceeds. *Yuckert*, 482 U.S. at 141.  At this point, the Commissioner must evaluate medical and other relevant evidence to determine the claimant's "residual functional capacity" ("RFC"), an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations his impairments impose.  20 C.F.R. §§ 404.1520(e), 404.1545(b)-(c), 416.920(e), 416.945(b)-(c).

At step four, the Commissioner determines whether the claimant can perform "past relevant work." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(e), 416.920(e).  If the claimant can work, he is not disabled; if he cannot perform past relevant work, the burden shifts to the Commissioner.  *Yuckert*, 482 U.S. at 146 n. 5.

Finally, at step five, the Commissioner must establish that the claimant can perform other work that exists in significant numbers in the national economy.  *Id.* at 142; 20 C.F.R. §§ 404.1520(e) & (f), 416.920(e) & (f).  If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1566, 416.966.

### IV.    ALJ Sullivan's 2019 Decision

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her amended alleged onset date through her date last insured, December 31, 1998. Tr. 1570.

At step two, the ALJ determined that Plaintiff has the following severe impairments through the date last insured: lumbar degenerative disease; obesity; myofascial pain syndrome; and multiple sclerosis.  Tr. 1570.

At step three, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment through the date last insured.  Tr. 1580.  The ALJ then assessed Plaintiff's residual functional capacity ("RFC"), finding that Plaintiff could perform a reduced range of sedentary work, with the following limitations:

> She could lift, carry, push, and pull 20 pounds occasionally and less than 10 pounds frequently. She could sit for about 6 hours in an 8-hour workday, and she could stand and/or walk in combination for 2 hours in an 8-hour workday. She could occasionally climb ramps and stairs, and she could never climb ladders, ropes, or scaffolds. She could occasionally stoop, kneel, crouch, and crawl. She needed to avoid unprotected heights, moving mechanical parts, and operation of a motor vehicle for commercial purposes.

Tr. 1571.

At step four, the ALJ found that Plaintiff could not perform her past relevant work.  Tr. 1580.

But at step five—considering Plaintiff's age, education, work experience, and RFC—the ALJ found that a significant number of jobs existed in the national economy that Plaintiff could perform, including work as a receptionist, information clerk, and appointment clerk.  Tr. 1581. Thus, the ALJ concluded that Plaintiff is not disabled through the date last insured.  Tr. 1568-82.

**DISCUSSION**

Plaintiff contends that the ALJ committed four errors: (1) the ALJ erroneously rejected Plaintiff's subjective symptom testimony because he (i) violated the law of the case doctrine by considering Plaintiff's work experience during the relevant time period, (ii) failed to consider Plaintiff's journal entries during the relevant time period, and (iii) concluded that Plaintiff's testimony was inconsistent; (2) the ALJ failed to provide sufficient reasons for rejecting Dr. Morris's medical opinion; (3) the ALJ erroneously discounted Plaintiff's husband's lay witness testimony; and (4) the ALJ failed to provide written findings of Plaintiff's transferable skills before determining that she could perform semi-skilled work at step five. Pl. Opening Br. 10-35, ECF 20.

As is explained below, the Court finds that—with respect to Plaintiff's subjective symptom testimony—the ALJ violated the law of the case doctrine and improperly failed to consider Plaintiff's journal entries. Additionally, the ALJ also erred in failing to provide written findings of Plaintiff's transferable skills. The ALJ did not err in otherwise concluding that Plaintiff's testimony was inconsistent, rejecting Dr. Morris's medical opinion evidence, or rejecting Plaintiff's husband's lay witness testimony. Accordingly, the Court reverses the Commissioner's decision denying Plaintiff's claim, and the case is remanded for further proceedings.

## I. Subjective Symptom Testimony

### A. *Legal Standard*

The ALJ is responsible for evaluating symptom testimony. SSR 16-3p, 2017 WL 5180304, at *1 (Oct. 25, 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of his symptoms. *Vasquez v. Astrue*, 572 F.3d

586, 591 (9th Cir. 2009). First, the claimant must produce objective medical evidence of one or more impairments that could reasonably be expected to produce some degree of symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007). The claimant is not required to show that the impairment could reasonably be expected to cause the severity of the symptoms, but only to show that it could reasonably have caused some degree of the symptoms. *Id.*

Second, the ALJ must assess the claimant's testimony regarding the severity of the symptoms. *Id.* The ALJ can reject the claimant's testimony "only by offering specific, clear and convincing reasons for doing so." *Id.* Thus, the ALJ must specifically identify the testimony that he does not credit and must explain what evidence undermines the testimony. *Holohan*, 246 F.3d at 1208. General findings are insufficient to support an adverse determination; the ALJ must rely on substantial evidence. *Id.* To discredit a plaintiff's testimony regarding the degree of impairment, the ALJ must make a "determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

Even if an ALJ commits an error, the Court "may not reverse an ALJ's decision on account of an error that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012), *superseded by regulation on other grounds as recognized in Sisk v. Saul*, 820 F. App'x 604, 606 (9th Cir. 2020). An error is harmless when it is inconsequential to the ultimate non-disability decision. *Stout v. Comm'r of Soc. Sec. Admin.*, 454 F.3d 1050, 1055 (9th Cir. 2006). "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Id.* (quoting *Shineski v. Sanders*, 556 U.S. 396, 409 (2009)). The Ninth Circuit has repeatedly "held that an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving a claimant's testimony, but also provided valid reasons that were

supported by the record." *Molina*, 674 F.3d at 1115. In such scenarios, "an error is harmless so long as there remains substantial evidence supporting the ALJ's decision and the error 'does not negate the validity of the ALJ's ultimate conclusion.'" *Id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

 B. *ALJ's Decision*

 In applying the first step of the credibility framework, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." Tr. 1575. In applying the second step, however, the ALJ determined that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and the other evidence in the record for the reasons explained in this decision." *Id.* Specifically, the ALJ discounted Plaintiff's testimony from the four hearings that occurred in this case because

> [o]verall, such inconsistencies between the contemporaneous evidence proximal to the date last insured and the claimant's testimony occurring one to two decades after her date last insured undermine her allegations regarding the intensity, persistency, and limiting effects of her symptoms, conditions, and resulting limitations during the period at issue.

Tr. 1574.

 Regarding Plaintiff's 2011 testimony, the ALJ found that the "lack of medical evidence during and proximal to the period at issue and the claimant's vague and sometimes inconsistent testimony fails to establish that she was disabled and unable to work during the period at issue." Tr. 1573. Regarding inconsistencies, the ALJ specifically noted that Plaintiff's testimony was inconsistent with her earlier reports to the agency. Tr. 1572. First, her testimony that she became unable to work in 1993-94 was inconsistent with her initial report that she stopped working in 1994 for non-medical reasons to work for her husband's business instead. Tr. 1572.

Additionally, Plaintiff initially reported that she continued to work full-time for her husband through 1999. Tr. 1572. The ALJ also noted that when Plaintiff underwent her consultation with Dr. Morris in 1999, Plaintiff made no allegations of naps, and there was no mention of daytime naps in medical records until 2004. Tr. 1572. Overall, the ALJ gave "greater weight" to Plaintiff's statements made earlier in the disability process, "because they were less skewed by the passage of time and the claimant's current condition," and those earlier statements were "more persuasive because she had every incentive to give [the] agency a complete and accurate depiction of her work history." Tr. 1572.

C.    Analysis

Plaintiff contends that the ALJ erroneously rejected Plaintiff's testimony concerning her symptoms during the relevant period between Plaintiff's alleged onset date in 1995 and her DLI in 1998 in three ways: by (i) violating the law of the case doctrine by considering Plaintiff's work activity during the relevant time period, (ii) failing to consider Plaintiff's journal entries during the relevant time period, and (iii) incorrectly concluding that Plaintiff's testimony was inconsistent. Pl. Opening Br. 10. The Court agrees with Plaintiff that the ALJ erred by violating the law of the case doctrine and failing to discuss Plaintiff's journal entries from the mid-1990s. However, the ALJ did not err in discounting Plaintiff's testimony given a lack of inconsistent testimony combined with a lack of medical evidence.

i.    Law of the Case

First, Plaintiff asserts that some of the ALJ's reasons for discounting Plaintiff's testimony have already been considered and rejected by previous decisions in this case, which prevented ALJ Sullivan from reaching those same issues under the law of the case doctrine. Pl. Opening

Br. 13-14.  Specifically, Plaintiff asserts that the ALJ erred in considering Plaintiff's prior work history during the relevant time period.

Under the law of the case doctrine, "a court is generally precluded from reconsidering an issue that has already been decided by the same court, or a higher court in the identical case." *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993) (internal quotations omitted).  This principle has been affirmed in the context of a district court's review of social security cases.  *See Buck v. Berryhill*, 869 F.3d 1040, 1050 (9th Cir. 2017); *Stacy v. Colvin*, 825 F.3d 563, 567 (9th Cir. 2016) (holding as a matter of first impression that "the law of the case doctrine appl[ies] in the social security context"); *Jackson v. Colvin*, 2017 WL 2365109, at *3 (applying the law of the case doctrine to conclude that the court was precluded from reconsidering an issue already considered in a prior district court decision).

Specifically, Plaintiff argues that the ALJ improperly relied on Plaintiff's work activity for her husband during the relevant time period to discount Plaintiff's testimony, because Judge Russo's 2016 decision already foreclosed that rationale.  Pl. Opening Br. 13 (citing *Thomas v. Bible*, 983 F.2d 152, 154 (9th Cir. 1993); *see also* Tr. 974-75.  In her 2016 decision, Judge Russo found that an earlier ALJ impermissibly determined that Plaintiff's credibility was undermined by her employment with her husband's business, concluding that "[t]he fact that [P]laintiff worked part-time, for a family member, and struggled to complete that work in a satisfactory manner, does not impugn her credibility."  Tr. 975.  Plaintiff argues that Judge Russo's decision precluded ALJ Sullivan from considering the same issue here when evaluating Plaintiff's testimony.

The Court agrees.  In rejecting Plaintiff's subjective symptom testimony, ALJ Sullivan noted that Plaintiff's "initial reports to this agency in 2009 indicate that she continued to work

full-time as a business manager for her husband's company through 1999." Tr. 1572. Judge

Russo concluded that it was impermissible to rely on Plaintiff's work history with her husband in

finding that Plaintiff's testimony was not credible. *See* Tr. 975. Here, ALJ Sullivan also relied

on Plaintiff's work activity in rejecting her testimony. Tr. 1572.

       The Commissioner also concedes that ALJ Sullivan pointed to Plaintiff's work activity

during the relevant time period, but the Commissioner asserts that the ALJ was permitted to do

so because Judge Russo's decision only "determined that the record had ambiguities that needed

to be resolved." Def. Br. 4, ECF 22. That is incorrect. As noted above, Judge Russo explicitly

concluded that it was impermissible to rely on Plaintiff's work activity when assessing her

credibility. Thus, because a higher court has already concluded that it was impermissible to rely

on such work activity when evaluating Plaintiff's testimony, ALJ Sullivan violated the law of the

case doctrine when rejecting Plaintiff's testimony. *See Huong Thi N. v. Berryhill*, 2018 WL

3312984, *1, *4 (D. Or. July 5, 2018) ("[T]he ALJ plainly violated the law of the case by

discrediting Plaintiff's testimony for the same reasons that Judge Coffin previously found

unpersuasive."). On remand, the ALJ should reassess Plaintiff's subjective symptom testimony

without reference to her work activity during the relevant time period.[3]

       ii.    1996-97 Journal Entries

       Additionally, Plaintiff argues that the ALJ erred in failing to mention Plaintiff's journal

entries from 1996 to 1997, in violation of Social Security Ruling ("SSR") 18-1p, which requires

---

[3]      On review, the Commissioner does not assert that any error in addressing
Plaintiff's work activity was harmless, which relives this Court of any obligation to consider the
issue. *See Carmickle v. Commissioner, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.
2008) ("[I]ssues not argued with specificity in briefing will not be addressed."). And given that
this case will be remanded on other grounds, this Court sees no reason to *sua sponte* conduct a
harmless error analysis in this case.

that the ALJ must "consider all of the evidence of record." Pl. Opening Br. 18. This Court

agrees. The ALJ "need not discuss *all* evidence presented to [him]. Rather, []he must explain

why significant probative evidence has been rejected." *Vincent ex rel. Vincent v. Heckler*, 739

F.2d 1393, 1394-95 (9th Cir. 1984) (internal quotations omitted); *see also Flores v. Shalala*, 49

F.3d 562, 570-71 (9th Cir. 1995). Plaintiff's journal entries were both significant and probative.

Plaintiff's journal entries documented Plaintiff's chronic pain, trouble sleeping, constant fatigue,

depression, tingling in her legs and feet, her naps, lack of energy, and Plaintiff's general feelings

of being unwell. Tr. 35-37, 162-74. Given that this evidence was the only available evidence of

Plaintiff's condition during the relevant time period, the evidence was both significant and

probative, and it was an error for the ALJ not to consider it.

The Commissioner implicitly concedes this error and instead argues that Plaintiff "cannot

meet her burden of showing harmful error" because the journal entries were "substantively the

same as Plaintiff's testimony at the hearing." Def. Br. 7. This Court disagrees. Although it is

true that Plaintiff's journal entries were substantially the same as her testimony, and there may

also be similar "persuasive reasons" to discount them, this Court cannot supply those reasons for

the ALJ. *See Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015). Moreover, the ALJ

purported to give "greater weight to the claimant's statements made earlier in the disability

process because they were less skewed by the passage of time," yet failed to even address her

contemporaneous evidence. Tr. 1572. Plaintiff has therefore met her burden of demonstrating

that the ALJ's failure to discuss this evidence *could* negate the validity of his ultimate

conclusion. *See Molina*, 674 F.3d at 1115. On remand, the ALJ must discuss Plaintiff's journal

entries and determine their impact when evaluating Plaintiff's subjective symptom testimony.

iii.    Inconsistent Testimony

Finally, the Court is not persuaded by Plaintiff's remaining arguments concerning her inconsistent testimony.  Plaintiff asserts that the remainder of the ALJ's rationale incorrectly found inconsistencies in the Plaintiff's testimony.  Pl. Opening Br. 15.  Plaintiff also argues that her failure to use the "magic word" of "nap" or mention her diminished concentration did not demonstrate an inconsistency with the medical record.  Pl. Opening Br. 15-16.  Further, she contends that the ALJ erroneously relied on Dr. Morris's May 1999 findings to reject Plaintiff's reports of recurring falls.  *Id*.  However, an "ALJ may consider inconsistent statements by a claimant in assessing her credibility."  *Popa v. Berryhill*, 872 F.3d 901, 906-07 (9th Cir. 2017).  Additionally, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony."  *Carmickle v. Comm'r*, 533 F.3d 1155, 1161 (9th Cir. 2008).  Here, the ALJ appropriately considered inconsistencies in testimony when weighing Plaintiff's credibility.  *See Popa*, 872 F.3d at 906-07.

Additionally, Plaintiff asserts that Judge Russo determined that an absence of medical evidence during the relevant period is not a legally valid reason to reject Plaintiff's testimony.  Pl. Opening Br. 14 (citing Tr. 689, 972 (citing *Flaten v. Sec'y of Health and Human Servs.*, 44 F.3d 1452, 1461 n.5 (9th Cir. 1995))).  Plaintiff also argues that the ALJ's reliance on a twenty-two-month gap in treatment was considered an ambiguity by Judge Russo that was not resolved on remand.  Pl. Opening Br. 14.

Plaintiff correctly notes that a "claimant may establish such continuous disabling severity by means of a retrospective diagnosis."  *Flaten v. Sec'y of Health & Hum. Servs.*, 44 F.3d 1453, 1461 (9th Cir. 1995).  A lack of supportive evidence is a valid consideration.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005).  Although subjective symptom testimony may not be wholly

rejected based on a lack of corroborating objective medical evidence, medical evidence is still a relevant factor in determining the severity of a claimant's symptoms. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001).

Here, the ALJ determined that "the lack of medical evidence during and proximal to the period at issue and the claimant's vague and sometimes inconsistent testimony fails to establish that she was disabled and unable to work during the period at issue." Tr. 1572-73. The ALJ also noted gaps treatment—notably, a twenty-two-month gap in treatment after Plaintiff's initial evaluation with Dr. Morris in May 1999. Tr. 1576. The Ninth Circuit has "long held that, in assessing a claimant's credibility, the ALJ may properly rely on 'unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment.'" *Molina*, 674 F.3d at 1113 (quoting *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008). Moreover, Judge Russo only concluded that an "ALJ may not rely *exclusively* on the lack of corroborating medical evidence to discount a claimant's testimony." Tr. 975 (emphasis added).

As such, the ALJ here did not rely solely on a lack of objective medical evidence in discounting Plaintiff's testimony; the ALJ determined that the lack of medical evidence combined with Plaintiff's inconsistent testimony and gap in medical treatment was relevant in crediting Plaintiff's subjective symptom testimony. Although Plaintiff may disagree with the ALJ's interpretation of the record, the ALJ's interpretation is supported by substantial evidence, which precludes the Court from engaging in second-guessing. *See Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) ("Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld.").

## II.    Medical Opinion Evidence

Plaintiff argues that the ALJ failed to provide specific and legitimate reasons for rejecting Dr. Morris's opinion that Plaintiff's condition began affecting her in 1995.  Pl. Opening Br. 19-25.  "A treating physician's opinion is entitled to substantial weight."  *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotations omitted).  The court "afford[s] greater weight to a treating physician's opinion because 'he is employed to cure and has a greater opportunity to know and observe the patient as an individual.'"  *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (quoting *Sprague v. Bowen*, 812 F.2d 1226, 1230 (9th Cir. 1987)).  An ALJ may discount a treating physician's contradicted opinion by providing specific and legitimate reasons supported by substantial evidence in the record.  *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007); *James v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997).[4]

The ALJ noted that the evidence of record contains no medical treatment before the DLI, and Plaintiff's first medical record is the May 1999 evaluation with Dr. Morris.  Tr. 1575-76.  The ALJ gave "limited weight to Dr. Morris's [2011] opinion because it was issued more than 10 years after the date last insured and is not entirely consistent with the evidence of record, including the medical records proximal to the period at issue, the claimant's statements about her work activity, and [Plaintiff's husband's] testimony."  Tr. 1578.

The ALJ further explained that Dr. Morris's opinions—including his retrospective opinion of Plaintiff's onset date—were internally inconsistent.  Tr. 1578.  The ALJ noted that although Dr. Morris's 2011 letter stated that Plaintiff's conditions, including fibromyalgia, began

---

[4]    Both Plaintiff and the Commissioner agree that this standard applies because Dr. Morris's opinion conflicts with at least one other medical opinion.  *See* Pl. Opening Br. 20; Def. Br. 8; Tr. 1127; Tr. 1577-80.

affecting Plaintiff in 1995 or before, Dr. Morris's own treating notes indicated that Plaintiff did not present with sufficient clinical findings of fibromyalgia until October 2001. *Id.* The ALJ also noted that the objective findings of tenderness did not support Dr. Morris's "excessive limitations on postural activities, absenteeism, or reaching." *Id.* The ALJ further found that despite Plaintiff's allegedly disabling symptoms since 1995, she sought no treatment for nearly two years after her initial evaluation with Dr. Morris in 1999. *Id.* Additionally, the ALJ noted that Dr. Morris's 2001 findings are "similar in nature" to his 1999 exam findings, so those findings did not establish the need for more restrictive limitations during the time period at issue than those provided for in Plaintiff's RFC. *Id.*

The ALJ also found that Dr. Morris's opinion concerning Plaintiff's work capacity was inconsistent with other evidence, including Plaintiff's earlier statements that she worked full-time through 1999 and her husband's testimony that she worked 30 to 35 hours per week through 1999. Tr. 1578. The ALJ also found Dr. Morris's opinion that Plaintiff was disabled and unable to work internally inconsistent, because although Dr. Morris noted that Plaintiff was disabled and unable to work, other medical notes indicated that Plaintiff was engaged in work activity, even despite Plaintiff's subjective reports of disabling symptoms." Tr. 1578. The ALJ also indicated that Dr. Morris's comments regarding Plaintiff's ability to work were "based largely, if not entirely, on [Plaintiff's] subjective reports, as there is no evidence that he ever observed [Plaintiff] in a working capacity." Tr. 1578. The ALJ explained that "[w]hile the claimant's ongoing work activity does not dispute the existence of her alleged medical conditions and symptoms, it does suggest the intensity, persistency, and severity of her symptoms may not be accurately reported." Tr. 1578.

First, Plaintiff contends that the ALJ erroneously rejected Dr. Morris's medical opinion on the grounds that it was made after the expiration of Plaintiff's insured status, which violates *Flaten*, 44 F.3d at 1461 n.5 ("Retrospective diagnoses by treating physicians and medical experts, contemporaneous medical records, and testimony from family, friends, and neighbors are all relevant to the determination of a continuously existing disability with onset prior to expiration of insured status."). Pl. Opening Br. 20.

The ALJ made no such finding. Rather, the ALJ found that Dr. Morris' retrospective opinion was not supported by or consistent with the evidence in the record and that Dr. Morris's 1999 examination findings were not indicative of a finding of disability. Tr. 1579. An ALJ may discount a retrospective medical opinion when the doctor did not examine a claimant before the claimant's date last insured and when the medical opinion is contradicted by other medical evidence. *Tidwell v. Apfel*, 161 F.3d 599, 602 (9th Cir. 1998) ("The fact that [the doctor] did not examine Appellant until . . . more than a year after the expiration of her insured status, coupled with other contradictory medical evidence, fully supports the ALJ's determination that [the doctor's] submissions were not convincing."). Both parties agree that Dr. Morris's medical opinion has been contradicted by other medical evidence. Further, the objective findings from the 1999 examination did not indicate a disability. Thus, the ALJ's finding did not purport to conclude that an absence of medical opinions before Plaintiff's DLI, on its own, led the ALJ to reject Dr. Morris's retrospective diagnosis.

Second, Plaintiff argues that the ALJ failed to properly explain why Dr. Morris's opinion that fibromyalgia affected Plaintiff before she met the diagnostic criteria for that condition raised concerns of Dr. Morris's overall assessment of Plaintiff during the relevant period. Pl. Opening

Br. 20.  Plaintiff also argues that the ALJ improperly determined that Dr. Morris's opinions were internally inconsistent based on Plaintiff's work abilities.  *Id.* at 21-23.

Incongruity between a doctor's opinion and his own treatment notes provides a valid basis for an ALJ to discount a medical opinion.  *Tommasetti*, 533 F.3d at 1041.  Such an incongruity existed here.  Dr. Morris's treatment notes did not note any presence of fibromyalgia until after Plaintiff's DLI.  *See* Tr. 546-52 (noting Plaintiff's positive fibromyalgia tender points in October 2001).  Despite these treatment notes, Dr. Morris opined in his 2011 letter that Plaintiff suffered from fibromyalgia since 1995.  Tr. 552-53.  Moreover, Judge Russo noted that Dr. Morris's 2011 letter was inconsistent with his treatment records for the same reason.  Tr. 980.  Therefore, the ALJ appropriately considered the incongruities between Dr. Morris's contemporaneous treatment notes and his later opinion when considering his medical opinions.

Additionally, the ALJ's reasons for rejecting Dr. Morris's medical opinions of Plaintiff's conditions during the relevant time period were legally sufficient and supported by substantial evidence.  Inconsistent medical opinions are valid considerations that an ALJ may consider when discounting a medical opinion.  *Morgan v. Comm'r Soc. Sec. Admin.*, 169 F.3d 595, 603 (9th Cir. 1999).  While Dr. Morris sometimes indicated that Plaintiff was disabled, other treatment notes indicated that Plaintiff was engaged in work activity despite her subjective reports of disabling symptoms.  *See* Tr. 260, 280, 289, 291, 294, 298, 307.  Moreover, the ultimate issue of disability is reserved for the Commissioner.  *See* 20 C.F.R. § 404.1527(d)(1) ("We are responsible for making the determination or decision about whether you meet the statutory definition of disability.").  It was therefore reasonable for the ALJ to note that these inconsistences weakened the credibility of Dr. Morris's opinion.  In sum, the ALJ provided specific and legitimate reasons

supported by substantial evidence to discredit Dr. Morris's opinion of Plaintiff's condition between 1995 and 1998.

### III.    Lay Witness Testimony

Third, Plaintiff argues that the ALJ improperly discounted statements from Plaintiff's former husband.  An ALJ may discount lay witness testimony if he provides reasons that are germane to each witness.  *Dodrill v. Shalala*, 12 F.3d 915, 919 (9th Cir. 1993). The ALJ did so here.

The ALJ gave "some weight" to Plaintiff's husband's testimony.  Tr. 1575.  The ALJ concluded that her husband had the opportunity to observe Plaintiff's symptoms first-hand.  *Id.* The ALJ highlighted that the husband testified that despite Plaintiff's alleged pain, fatigue, and diminished concentration, Plaintiff continued to work 30 to 35 hours per week for the husband's business through 1999 with some noted difficulties performing her tasks.  *Id.*  Further, the ALJ noted that Plaintiff's husband testified that while Plaintiff had some difficulties with performing household chores in the 1990s, those difficulties did not become severe until around 2005.  *Id.* The ALJ found this testimony consistent with the medical evidence of record, which demonstrated that Plaintiff's condition worsened in the last 15 years, rather than in the mid- to late 1990s.  *Id.*  The ALJ ultimately concluded that his testimony was "at times vague" regarding the relevant timeframe, which was reasonably given that his testimony was offered more than 12 years after Plaintiff's DLI.  *Id.*

Plaintiff argues that the ALJ's reasons for only giving "some" weight her husband's testimony on the ground that (1) his testimony was vague, and (2) he testified that she worked 30 to 35 hours per week until 1999 did not constitute germane reasoning.  Pl. Opening Br. 26. Plaintiff contends that, even if she were able to work up to 35 hours per week, her husband's

testimony demonstrates that Plaintiff was not completing work tasks and had concentration issues. *Id.* Additionally, Plaintiff contends that her husband's testimony cannot be dismissed as "vague" when medical evidence from the relevant period has been destroyed or has become otherwise unavailable. *Id.* at 27.

The ALJ provided germane reasons for discrediting Plaintiff's husband's testimony. In rejecting lay testimony, "[i]nconsistency with medical evidence is one such reason." *Bayliss v. Bayhart*, 427 F.3d 1211, 1218 (9th Cir. 2005). Additionally, contradictory testimony with other evidence in the record is another acceptable basis for rejecting lay witness testimony. *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001). Here, the ALJ accepted the husband's testimony that was consistent with the record of Plaintiff's work activities and objective medical evidence in the record, and the ALJ rejected portions of the testimony that contradicted other evidence in the record. The ALJ provided germane reasons for rejecting Plaintiff's husband's lay witness testimony that was inconsistent with the relevant evidence in the record.

## IV.    Step Five Transferable Skills Finding

Plaintiff asserts that the ALJ's decision did not properly consider Plaintiff's transferable skills at step five, which resulted in harmful error. Pl. Opening Br. 30. The Court agrees.

Social Security Ruling ("SSR") 82-14 defines transferability of skills as "applying work skills which a person has demonstrated in vocationally relevant past jobs to meet the requirements of other skilled or semiskilled jobs." SSR 82-41 § 2(b). Importantly,

> [w]hen the issue of skills and their transferability must be decided, the . . . ALJ is required to make certain findings of fact and include them in the written decision. Findings should be supported with appropriate documentation.
>
> When a finding is made that a claimant has transferable skills, the acquired work skills must be identified, and specific occupations to which the acquired work skills are transferable must be cited in the . . . ALJ's decision. . . . It is important that these findings be made at all levels of adjudication to clearly establish the

basis for the determination or decision for the claimant and for a reviewing body including a Federal district court.

SSR 82-14 § 6.  Although "SSRs do not carry 'the force of law,' . . . they are binding on ALJs nonetheless."  *Bray v. Commissioner of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009).

At the 2019 hearing, the VE testified that Plaintiff had transferable clerical and typing skills.  Tr. 1609-10.  In the ALJ's decision, after determining that Plaintiff was unable to perform any past relevant work, the ALJ concluded that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is 'not disabled,' whether or not [Plaintiff] has transferable job skills."  Tr. 1581 (citing SSR 82-41 and 20 C.F.R. Part 404, Subpart P, App. 2).  Subsequently at step five, the ALJ determined that Plaintiff could perform three semi-skilled jobs: receptionist, information clerk, and appointment clerk.  Tr. 1581-82.

Here, transferability of skills was a dispositive issue because the ALJ determined at step five that Plaintiff could perform three semi-skilled jobs.  Semi-skilled work requires "some skills."  20 C.F.R. §§ 404.1568(B), 416.968(b).  Although Plaintiff's past relevant work included a semi-skilled job, the ALJ made no written finding regarding what skills, if any, Plaintiff acquired from that work and whether those skills were transferable to semi-skilled work as a receptionist, information clerk, or appointment clerk.  Thus, the ALJ erred by failing to make the written findings required by SSR 82-14.

Further, the ALJ inappropriately concluded that the determination of transferable skills was not material based on the Medical Vocational Rules ("grids"), which states that a person with Plaintiff's RFC, age, education, and previous work experience is considered "not disabled," regardless of whether the person's skills are transferable.  *See* 20 C.F.R. Part 404, Subpart P., App. 2.  The Ninth Circuit has rejected a nearly identical reliance on the Medical Vocational

Rules in *Barnes v. Berryhill*, 895 F.3d 702 (9th Cir. 2018). In *Barnes*, the ALJ in that case determined that "[t]ransferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is 'not disabled,' whether or not the claimant has transferable job skills." *Barnes*, at 704. The Ninth Circuit rejected the ALJ's reliance on the grids, because although the grids can be used to support a disability determination, "the opposite is not true: the Grids as a framework may not be used to direct a conclusion of *nondisability*." *Id.* at 707 (emphasis in original) (internal quotation omitted). In *Barnes*, as is the case here, "the ALJ went on the find [the plaintiff] not disabled based on h[er] ability to perform semi-skilled work. Because semi-skilled work requires skills, that made transferability of skills dispositive." *Id.* The same reasoning applies here. The sole difference in this case from *Barnes*, however, is that the VE here did provide testimony of some of Plaintiff's transferable skills.

The Commissioner argues that the VE's testimony concerning Plaintiff's typing skill was sufficient to show that Plaintiff had the skills to perform the semi-skilled jobs identified.[5] Def. Br. 11. The Commissioner is mistaken. Even if the VE appropriately testified about Plaintiff's transferable typing skill, the ALJ was required to make a written finding of Plaintiff's transferable skills. *See* SSR 82-14. Moreover, "an ALJ does not satisfy his duty under SSR 82-14 to make written finding regarding transferability of skills by relying on the testimony of a VE." *Barnes*, 895 F.3d at 708. As SSR-82-14 explains, written findings are crucial to "clearly establish the basis for the determination or decision for the claimant and for a reviewing body including a Federal district court."). SSR 82-14. Here, the ALJ assumed that Plaintiff had

---

[5] The Commissioner concedes that the "clerical skill" is too broad to be considered a transferable skill under the appropriate standards. Def. Br. 11.

transferable skills in making a step five finding "but failed to articulate a clear basis to support that assumption, contrary to the requirement of SSR 82-41." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1229 (9th Cir. 2009).

Accordingly, the Court cannot properly determine whether substantial evidence supports the ALJ's finding that Plaintiff is not disabled. The question of transferable skills must be decided in the first instance by an ALJ. Because the ALJ's error in failing to make written findings of Plaintiff's transferable skills impacted the ALJ's step five finding, the ALJ's error was not harmless and warrants a remand.

**V.    Remand is the appropriate remedy.**

"The decision whether to remand a case for additional evidence, or simply to award benefits is within the discretion of the court." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). In a number of cases, however, the Ninth Circuit has "stated or implied that it would be an abuse of discretion for a district court not to remand for an award of benefits when [the three-part credit-as-true standard is] met." *Garrison v. Colvin*, 759 F.3d 995, 1021 (9th Cir. 2014) (citations omitted). The credit-as-true standard is met if three conditions are satisfied:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Id.* at 1020 (citations omitted). Even when the credit-as-true standard is met, the district court retains the "flexibility to remand for further proceedings when the record [evidence] as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." *Id.* at 1021.

Plaintiff urges the Court to exercise its discretion and remand for a payment of benefits, especially given Plaintiff's advanced age and the unusual length of these proceedings, which has spanned 11 years, four administrative hearings, and four appeals to this court. Pl. Opening Br. 31-35. The Court acknowledges Plaintiff's argument. Unfortunately, as Judge Russo acknowledged six years ago, a "claimant is not entitled to benefits under the statute unless the claimant is, in fact, disabled, no matter how egregious the ALJ's errors may be." *Strauss v. Comm'r Soc. Sec. Admin.*, 635 F.3d 1135, 1138-39 (9th Cir. 2011).

Turning to the specific legal standards, Plaintiff asserts that the credit-as-true standard is met based on the ALJ's alleged errors related to Plaintiff's testimony, her husband's lay testimony, and the rejection of Dr. Morris's opinions. Pl. Opening Br. 33. But this Court has already concluded that ALJ only erred with respect to Plaintiff's testimony.[6] And the ALJ's two errors concerning Plaintiff's testimony do not satisfy the credit-as-true standard.

Under the first and third prongs of the credit-as-true standard, the record has been fully developed, and Plaintiff would be found disabled if her entire testimony were credited as true. With respect to the second prong, however, this Court cannot conclude that the ALJ failed to provide legally sufficient evidence for rejecting Plaintiff's testimony. The ALJ's primary reasons for discounting Plaintiff's testimony were based on (1) her inconsistent testimony combined with (2) a lack of objective medical evidence. Tr. 1572. The ALJ's errors in this case do not *necessarily* undermine those key findings. The ALJ's error in addressing Plaintiff's work activity was an *additional* reason to discount her testimony, and that error was not a sole basis for determining inconsistency. *See* Tr. 1572 (discussing Plaintiff's work history after addressing

---

[6]     To be sure, the Court also concluded that the ALJ erred in failing to include a transferable skills finding at step five. But Plaintiff does not argue that the ALJ's error in this regard could satisfy the credit-as-true standard.

other inconsistencies and the lack of medical evidence).  Additionally, with respect to the ALJ's error in failing to address Plaintiff's journal entries, the ALJ could reach the same conclusion with respect to the inconsistencies in Plaintiff's journal entries that was previously reached based on Plaintiff's testimony before the agency, which was substantially similar.  Accordingly, this Court cannot conclude that the ALJ failed to provide a legally sufficient reason for rejecting Plaintiff's testimony, and Plaintiff cannot satisfy the credit-as-true standard.

Moreover, the record in this case, as a whole, creates serious doubt as to whether Plaintiff is disabled, at least within the meaning of the Social Security Act.  *See Garrison*, 759 F.3d at 1021.  The Court is sympathetic to Plaintiff's condition and the lengthy delay she has endured throughout this process, which Plaintiff's counsel thoughtfully discusses in her brief.  Pl. Opening Br. 33-34.  Nevertheless, the ALJ's opinion identifies multiple bases for this Court to doubt whether Plaintiff can demonstrate her disability before her DLI, which she is required to do under the Social Security Act.  That determination is best left to the ALJ on remand.  For these reasons, this Court concludes that this case should be remanded for further proceedings consistent with this opinion.

## CONCLUSION

Based on the foregoing, pursuant to 42 U.S.C. § 405(g), sentence four, the Commissioner's decision is REVERSED and REMANDED.  On remand, the ALJ shall (1) reassess Plaintiff's subjective symptom testimony without reference to her work activity during the relevant time period; (2) discuss Plaintiff's journal entries and discuss their impact on the evaluation of Plaintiff's subjective symptom testimony; (3) reconduct the step three analysis; (4) make written findings of Plaintiff's transferable skills; and (5) reconduct the step five analysis.

IT IS SO ORDERED.

DATED this 10th day of January, 2022.

ANDREW HALLMAN
United States Magistrate Judge